## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**OCT 3 1 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| LIFELINE INC.<br>2833 Georgia Ave, NW<br>Ground Level<br>Washington, DC 20010 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  Civil Action Number: _____<br>) |
| JULIUS YERIMA BAKARI<br>6210 North Capitol Street, NW<br>Washington, DC 20011 | )<br>)<br>)          JURY TRIAL DEMANDED<br>) |
| EUGENIE BAKARI, aka<br>  MBOUTCHOCK EUGENIE KABIWA,<br>  aka EUGENIE KABIWA<br>6210 North Capitol Street, NW<br>Washington, DC 20011 | )<br>)<br>)<br>)<br>) |
| GASTON POUFONG<br>8 Jenna Avenue<br>Attleboro, MA 02703 | )<br>)<br>) |
| Lifeline Home Health, INC.<br>353 Heritage Park Trace, NW<br>Kennesaw, GA 30144 | )<br>)<br>) |
| LEONIE NTSAH FOBUZIE<br>353 Heritage Park Trace, NW<br>Kennesaw, GA 30144 | )<br>)<br>) |
| MARTIN CHEH TAMUKONG,<br>8501 Sweet Brenda Court<br>Laurel, MD 20705 | )<br>)<br>) |
| LIFELINE, INC. d/b/a LIFELINE HOME<br>  HEALTH<br>2025 Kent Road<br>Folcroft, PA 19032 | )<br>)<br>)<br>)<br>) |

Case: 1:14-cv-01833
Assigned To : Leon, Richard J.
Assign. Date : 10/31/2014
Description: TRO/PI

1



ROLAND NIBUH                           )
43 Cummins Highway, Suite 3            )
Roslindale, MA 02131                   )
                                       )
        Defendants.                    )
_____)

## VERIFIED COMPLAINT FOR BREACH OF CONTRACT; FRAUD; INTENTIONAL MISREPRESENTATION – CONCEALMENT OR NON-DISCLOSURE; CONVERSION; UNJUST ENRICHMENT; GROSS NEGLIGENCE; BREACH OF FIDUCIARY DUTIES; CIVIL CONSPIRACY

Plaintiff, Lifeline, Inc. ("Plaintiff"), by undersigned counsel, files its Complaint

against Defendants Julius Yerima Bakari, Eugenie Bakari, aka Mboutchock Eugenie Kabiwa,

aka Eugenie Kabiwa, Gaston Poufong, Lifeline Home Health, Inc., Leonie Ntsah Fobuzie,

Martin Cheh Tamukong, Lifeline, Inc. d/b/a Lifeline Home Health, and Roland Nibuh,

severally and jointly (collectively "Defendants"), states as follows:

### JURISDICTION AND VENUE

1.      That jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332 because the

acts and omissions contained herein involve citizens of different States where the amount in

controversy is over $75,000.00, exclusive of interests and costs.

2.      The venue in this Court is proper under 28 U.S.C. § 1391 as acts and omissions

alleged in the Complaint occurred and had impact in the District of Columbia and select

Defendants reside in the District of Columbia within the geographical jurisdiction of this

judicial district.

2

## THE PARTIES

3.      Plaintiff, Lifeline, Inc., is now, and at all relevant times, a resident of the District of Columbia.

4.      Defendant Lifeline Home Health, Inc. is a foreign entity registered in the State of Georgia using 6210 North Capitol Street, NW, Washington, DC 20011 as its address and the Registered Agent is located at 353 Heritage Park Trace, NW, Kennesaw, GA 30144.

5.      Defendant Lifeline, Inc. d/b/a Lifeline Home Health is a foreign entity registered in the Commonwealth of Pennsylvania and is located at 2025 Kent Road, Folcroft, PA 19032.

6.      Julius Yerima Bakari ("Defendant Julius Bakari") is a resident of the State of Maryland and is an officer of Lifeline, Inc. in Massachusetts ("Lifeline Massachusetts") and Defendants Lifeline Home Health, Inc. and Lifeline Home Health.

7.      Eugenie Bakari, aka Mboutchock Eugenie Kabiwa, aka Eugenie Kabiwa ("Defendant Eugenie Bakari") is a resident of the State of Maryland, is an officer of Defendant Lifeline Massachusetts, and Lifeline Home Health, Inc.

8.      Gaston Poufong ("Defendant Poufong") is a resident of the Commonwealth of Massachusetts and is an officer and registered agent for Lifeline Massachusetts

9.      Leonie Ntsah Fobuzie ("Defendant Fobuzie") is registered agent for Defendants Lifeline Home Health, Inc. and Lifeline Home Health and operates in the State of Georgia.

10.     Martin Cheh Tamukong ("Defendant Tamukong") is an officer for Defendant Lifeline Home Health, Inc. and operates in the State of Maryland.

11.     Roland Nibuh ("Defendant Nibuh") is registered agent for Lifeline, Inc. d/b/a Lifeline Home Health operating in the State of Pennsylvania.

3

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.     Rhoda Makinde ("Mrs. Makinde"), and her husband, Peter Makinde ("Peter

Makinde"), founded and incorporated Lifeline, Inc. ("Plaintiff") in the District of Columbia

("DC") on January 7, 2003 and registered the entity with the DC Department of Consumer

and Regulatory Affairs ("DCRA") on that same date.  (Exhibit A para. 1.)

13.     At the time of incorporation, Mrs. Makinde was President and Mr. Makinde was

Chief Executive Officer.

14.     Plaintiff is a medical staffing agency that provides home healthcare services to

DC residents.  (*Id.* at para. 3.)

15.     Plaintiff is also licensed in Maryland and Virginia to provide home healthcare

services.  (*Id.* at para. 4.)

16.     Plaintiff provides these services by entering into subcontract agreements with

personal care aide contractors ("contractors") who work directly with the resident-

beneficiaries.

17.     In 2010, Mrs. Makinde met Defendant Julius Bakari when he marketed his home

health care company to Plaintiff as a service provider to conduct routine medical

examinations and certifications for contractors.

18.     Mr. and Mrs. Makinde were interested in expanding Plaintiff's operations and

discussed the possibility with Defendant Julius Bakari.

19.     In 2011, Defendant Julius Bakari and Mrs. Makinde entered into a partnership

agreement for Defendant Julius Bakari to oversee the daily operations of Lifeline, Inc.'s new

4

office in Massachusetts ("Mass."). Defendant Poufong was hired to manage the daily activities of the new Massachusetts office. (*See id.* at paras. 5-6.)

20.    Rights to Plaintiff's name, registration, and corporate decisions were held by Mr. and Mrs. Makinde. (*Id.* at para. 6.)

21.    On July 27, 2011, Plaintiff expanded its business into Mass. and Mrs. Makinde registered Plaintiff as a foreign entity. (*See id,* at para. 7.)

22.    DC has jurisdiction over all of Plaintiff's legal disputes. (*Id.* at para. 5.)

23.    Mrs. Makinde and Defendant Julius Bakari opened corporate payroll and expense accounts at Bank of America for Lifeline, Inc. in Massachusetts ("Lifeline Massachusetts") to which both individuals were signatories. (*Id.* at para. 8.)

24.    Plaintiff had originally established corporate accounts with Bank of America in DC where Mrs. Makinde has banked for more than eight years and where she maintained personal and corporate accounts for other business she and Mr. Makinde own and operate. (*See id.* at para. 14.)

25.    Mrs. Makinde and Defendant Julius Bakari jointly managed Plaintiff's Lifeline Massachusetts corporate funds. (*See id.* at para. 8.)

26.    Mrs. Makinde traveled to Massachusetts to monitor company activity and address business matters with Defendant Julius Bakari. (*Id.* at para. 9.)

27.    Mrs. Makinde and Defendant Julius Bakari regularly met and discussed Lifeline Massachusetts matters. (*Id.* at para. 10.)

28.    Mrs. Makinde and Defendant Julius Bakari hired Defendant Poufong in 2011 as Plaintiff's Administrator. (*Id.* at para. 9.)

5

29.     Defendant Poufong reported weekly to Mrs. Makinde and Defendant Julius
Bakari on Plaintiff's Lifeline Massachusetts matters. (*Id.* at para. 11.)

30.     In August 2014, Mrs. Makinde noticed unusual transactions in the Lifeline
Massachusetts expense account and a loan on the account. (*Id.* at para. 12.)

31.     Monthly, one thousand dollar deductions were occurring on the Lifeline
Massachusetts accounts that neither Mr. nor Mrs. Makinde authorized or acquired
knowledge. (*See id.*)

32.     Defendant Julius Bakari told Mrs. Makinde that the deductions were financing
his recent purchase of a new work vehicle for $28,000.00 that totaled $33,000.00 with
taxes. (*Id.*)

33.     Mrs. Makinde has since learned that the actual vehicle price including taxes was
approximately $48,000.00 and that Defendant Julius Bakari admitted that his wife,
Defendant Eugenie Bakari, was driving the car regularly in DC. (*See id.*)

34.     Mrs. Makinde was surprised to learn that Lifeline Massachusetts was generating
enough profit for Defendant Julius Bakari to purchase a vehicle. (*See id.* at para. 13.)

35.     Defendant Julius Bakari had repeatedly denied Mrs. Makinde's requests to draw
a salary from Lifeline Massachusetts citing the fact that it was too early to do so and that the
office was earning insufficient revenue. (*See id.*)

36.     Defendant Julius Bakari and Mrs. Makinde agreed that Mrs. Makinde would use
the Lifeline Massachusetts funds to purchase a work vehicle for $28,000.00. (*Id.*)

37.     Mrs. Makinde made three withdrawals from the Lifeline Massachusetts expense account at a local DC branch of Bank of America: 1) $8,000 on August 19, 2014; 2) $2,500.00 on August 22, 2014; and 3) $17,500.00 on August 30, 2014. (*Id.* at para. 14.)

38.     The latter withdrawal resulted in a highly unusual occurrence.

39.     When the Bank of America teller withdrew the $17,500.00, the account immediately showed a negative balance of $16,000.00 when just minutes before the transaction the account had sufficient funds. (*See id.*)

40.     The teller informed Mrs. Makinde of the overdraft and offered to transfer funds from Plaintiff's other Lifeline Massachusetts account to re-establish a positive balance. (*Id*).

41.     Mrs. Makinde agreed and authorized the transfer. (*Id*.)

42.     On September 3, 2014, Bank of America called Mrs. Makinde and informed her that Defendant Julius Bakari accused her of fraud and theft regarding the $16,000.00 that was transferred from one Lifeline Massachusetts account to the other Lifeline Massachusetts account to re-establish a positive balance, claiming that the funds were transferred from a Lifeline Massachusetts account where Mrs. Makinde was not an authorized signatory. (*Id.*,at para. 15. )

43.     Upon learning about the transfer, Defendant Julius Bakari had falsely accused Mrs. Makinde of fraud and theft for having accessed an account to which she was not a signatory. (*See id.*)

44.     Upon further conversation with Bank of America's Investigator, the funds the bank teller transferred were from a third account that Mrs. Makinde was unaware of its existence. (*See id.*)

7

45.     Defendant Julius Bakari secretly and unlawfully established this account in
Plaintiff's name and was transferring Lifeline Massachusetts revenue from the two
legitimate payroll and expense accounts to this third, unauthorized account absent Mr. and
Mrs. Makinde's knowledge and consent. (See id.)

46.     Bank of America informed Mrs. Makinde that this third fraudulent account lists
Defendant Julius Bakari as sole signatory. (Id.)

47.     Unaware that it was Defendant Julius Bakari who acted fraudulently, Bank of
America based its response to the fraud and theft accusations on information obtained from
him. (See id.)

48.     Bank of America refunded Defendant Julius Bakari the $16,000.00, accused Mrs.
Makinde of fraud and theft, and informed her that they were closing all of her Bank of
America personal and corporate accounts and would send her checks with the remaining
balances. (See id.)

49.     As of this writing, Mrs. Makinde is still waiting to receive those funds.

50.     Defendant Julius Bakari's fraud and conversion threaten Plaintiff's and Mrs.
Makinde's integrity.

51.     Plaintiff's contractors are no longer permitted to perform over-the-counter
payroll check cashing at Bank of America. (See id.)

52.     Bank of America now requires Plaintiff's contractors to first deposit the checks
and allow time for clearance before making the funds available, which is an inconvenience
to the contractors and has raised concerns about Plaintiff's stability and liquidity. (Id.)

8

53.    Mrs. Makinde has also been personally inconvenienced because she now has to find a bank that will allow her to open new corporate and personal accounts with the fraud and theft investigation on her record. (*Id.*)

54.    Defendant Julius Bakari's actions constitute fraud and conversion and are ruining Plaintiff's corporate reputation and Mrs. Makinde's personal reputation.

55.    Plaintiff unjustly appears as an insolvent business and Mrs. Makinde is unjustly accused of fraud and theft.

56.    Since the Bank of America incident, Mrs. Makinde conducted her own investigation of Defendant Julius Bakari's Lifeline Massachusetts Activities. (*Id.*at para. 16.)

57.    Mrs. Makinde learned that Defendant Julius Bakari acted without her or Mr. Makinde's knowledge or consent by using Plaintiff's name to open fraudulent businesses in Georgia ("GA") and Pennsylvania ("PA"). (*See id.*; *see* Exhibit B; *see* Exhibit C. )

58.    Further fraud occurred in August and September 2012 when Defendant Julius Bakari changed Plaintiff's name in Massachusetts from Lifeline, Inc. to Lifeline Home Health, Inc. using a fraudulent Certificate of Amendment from DCRA. (*See* Exhibit A, para. 16; *see* Exhibit D, pp. 6-9.)

59.    In November 2012, Defendant Julius Bakari changed the business name back to Lifeline, Inc. in Massachusetts using another fraudulent Certificate of Amendment from DCRA. (Exhibit A, para. 16; Exhibit D, pp. 10-13.)

60.    Based on recent Lifeline Massachusetts corporate registration records and information, it appears that from 2011 through 2013, Defendant Julius Bakari amended corporate filings to remove Mrs. Makinde as an officer and replaced Mrs. Makinde's name with his wife's name, Defendant Eugenie Bakari. (*See* Exhibit D; *see* Exhibit E.)

9

61.     Under the fraudulent Lifeline Massachusetts amendment, Defendant Julius
Bakari lists himself as President, Vice President, and Treasurer, his wife Defendant Eugenie
Bakari as Secretary, Defendant Poufong as a Director, and Defendant Nibuh as the
Registered Agent. (*See* Exhibit E.)

62.     Under the fraudulent Lifeline Home Health Inc. in GA, Defendant Julius Bakari
lists himself as CEO, his wife Defendant Eugenie Bakari aka Eugenie Kabiwa aka Mboutchock
Eugenie Kabiwa as CFO, Defendant Tamukong as Secretary, and Defendant Fobuzie as
Registered Agent. (*See* Exhibit B.)

63.     Under the fraudulent Lifeline, Inc. in PA, Defendant Julius Bakari lists himself as
CEO and Defendant Fobuzie as Registered Agent. (*See* Exhibit C.)

64.     Defendants' fraudulent conduct also poses a risk to public health and safety. It
is uncertain whom Defendant Julius Bakari has employed at these fraudulent businesses and
whether any of the staff and contractors are duly licensed to perform required services.

65.     Beneficiaries dependent on home health care agencies for their medical well-
being are at risk of receiving care from and having in their homes unauthorized and
potentially unlicensed individuals.

66.     Defendants are fraudulently benefiting from the solid reputation Mrs. Makinde
created through stellar and lawful operation of Plaintiff's business.

67.     Defendants are misrepresenting Plaintiff and potentially tarnishing its
reputation.

68.     Defendants' conduct threatens to create potentially irreversible damage to
Plaintiff, impair its revenue generation, and ultimately run it out of business. (*See* Exhibit A,
paras. 12-16.)

10

69.     Defendants are committing fraud, intentional misrepresentation, and conversion and are benefiting from unjust enrichment. (*See id.*)

70.     Defendant Julius Bakari's conduct is beyond his scope of delegated authority as Plaintiff's officer in Lifeline Massachusetts and constitutes breach of contract, negligence, and breach of fiduciary duties.

71.     Defendants are destroying Mrs. Makinde's personal and professional reputation.

72.     Mrs. Makinde is the victim of a false accusation and is suffering personal embarrassment and disruption to her work. (*See* Exhibit A, paras. 14-16.)

73.     Bank of America believed Defendant Julius Bakari's false allegation of fraud against Mrs. Makinde. (*See id.*, at para. 15.)

74.     Mrs. Makinde has always engaged with bank employees and officials in an honest and prudent manner.

75.     Mrs. Makinde now stands falsely accused of an alleged attempt to defraud and steal from Bank of America where she has conducted personal and corporate transactions for the past eight years. (*Id.*)

## COUNT ONE – BREACH OF CONTRACT
### (Defendant Julius Bakari)

76.     Plaintiff incorporates herein by reference paragraphs 1 through 75 above.

77.     Pursuant to the partnership agreement between Mrs. Makinde and Defendant Julius Bakari, Defendant Julius Bakari became an officer for Lifeline Massachusetts for the sole purpose of assisting in expansion of Plaintiff's business from DC into Massachusetts and

11

78.     There was never discussion or consent given by Mr. or Mrs. Makinde for authorized expansion anywhere else in the United States.

79.     Pursuant to Plaintiff's bylaws, Defendant Julius Bakari is prohibited from making corporate decisions independently without authorization from the board of directors.

80.     The corporation is required to hold annual meetings, notify shareholders when annual and special meetings are held, and obtain signed authorization by all voting shareholders when informal actions are taken.

81.     As partner, officer, and shareholder, Mrs. Makinde should have been informed sometime during 2011 to 2013 when the company was allegedly acting to expand into additional jurisdictions, change its business name, and conduct itself in any other manner that would impact the bylaws and partnership agreement between Mrs. Makinde and Defendant Julius Bakari.

82.     Defendant Julius Bakari's establishment of fraudulent businesses in Pennsylvania and Georgia and making unauthorized changes to Plaintiff's name is conduct that exceeds his scope of authority and constitutes a material breach of the partnership agreement.

WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia, the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the

12

sole signatory, the $48,000.00 purchase of a personal vehicle, and the $16,000.00

conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits;

opportunity loss; a tarnished reputation; grave risk to its financial and operational stability;

and threat of insolvency, Plaintiff respectfully requests that compensatory judgment be

entered in its favor and against Defendants, jointly and severally, in an amount greater than

$2,000,000.00 or an amount to be determined at trial, with interests and costs, attorney's

fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT TWO – FRAUD

### (Defendant Julius Bakari, Defendant Eugenie Bakari, Defendant Lifeline Home Health, Inc., Defendant Lifeline Home Health, Defendant Poufong, Defendant Fobuzie, Defendant Tamukong, and Defendant Nibuh)

83.     Plaintiff incorporates herein by reference paragraphs 1 through 82 above.

84.     Defendants, jointly and severally, concealed the material fact that they used

Plaintiff's Lifeline Massachusetts revenue, profits, and reputation to establish fraudulent,

affiliate businesses in Georgia and Pennsylvania in Plaintiff's name, and failed to disclose or

prevent Defendants Julius Bakari and Eugenie Bakari from diverting Plaintiff's Lifeline

Massachusetts revenue and profits to benefit personally with the purchase of a personal

vehicle and Defendant Julius Bakari's establishment of an unauthorized third Lifeline

Massachusetts bank account at Bank of America.

85.     Pursuant to the partnership agreement, Plaintiff relied on Defendants Julius

Bakari, Eugenie Bakari, and Poufong to manage Lifeline Massachusetts' affairs and make

decisions in its best interests.

86.     As a partner regarding Lifeline Massachusetts, Defendant Julius Bakari owed a

fiduciary duty to Plaintiff.

13

87.     As an officer regarding Lifeline Massachusetts, Defendant Poufong owed fiduciary duty to Plaintiff.

88.     As an officer regarding Lifeline Massachusetts that was fraudulently changed to Lifeline Home Health, Inc. and changed back to Lifeline, Inc., Defendant Eugenie Bakari owed a fiduciary duty to Plaintiff since she was aware of the partnership agreement between her husband, Defendant Julius Bakari and Mrs. Makinde, and became an officer of Lifeline Massachusetts fraudulently replacing Mrs. Makinde.

89.     Defendants Julius Bakari, Eugenie Bakari, and Poufong breached their fiduciary duties intentionally with malice and/or reckless disregard for Plaintiff's best interests, reputation, and possession and rightful use of its property.

90.     In their collective breach of their fiduciary duty to Plaintiff, Defendants Julius Bakari, Eugenie Bakari, and Poufong acted willfully and contrary to Plaintiff's best interests.

91.     As a direct and proximate cause of Defendants Julius Bakari, Eugenie Bakari, and Poufong's breach of fiduciary duty, Plaintiff has suffered damages.

92.     As a direct and proximate cause of Defendants' failure to disclose material facts about the establishment of fraudulent, affiliate businesses in Plaintiff's name, Plaintiff has suffered damages.

        WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia, the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion

14

Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss;

a tarnished reputation; grave risk to its financial and operational stability; and threat of

insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its

favor and against Defendants, jointly and severally, in an amount greater than

$2,000,000.00 or an amount to be determined at trial, with interests and costs, attorney's

fees, and for such other and further relief as this Court deems appropriate and just.

### COUNT THREE – INTENTIONAL MISREPRESENTATION –
### CONCEALMENT OR NON-DISCLOSURE
### (Defendant Julius Bakari, Defendant Eugenie Bakari, Defendant Poufong)

93.     Plaintiff incorporates herein by reference paragraphs 1 through 92 above.

94.     Mrs. Makinde regularly requested updates from Defendants Julius Bakari and

Poufong on Lifeline Massachusetts' revenue, profits, and performance to ascertain when

she might begin drawing a salary from the company.

95.     Defendant Julius Bakari failed to disclose that Lifeline Massachusetts' operations

were generating profits.

96.     Instead, Mrs. Makinde had to observe unusual, unauthorized transactions on

Lifeline Massachusetts's expense account and a loan on the account before Defendant Julius

Bakari disclosed truthful, material information about Lifeline Massachusetts's finances and

operations.

97.     Plaintiff, through Mrs. Makinde, relied on the belief that Lifeline Massachusetts

was not profitable based on Defendant Julius Bakari's statements.

98.     Defendant Julius Bakari failed to disclose material financial information that he had established an unauthorized third Lifeline Massachusetts bank account affiliated with Plaintiff's Lifeline Massachusetts operations on which he was sole signatory.

99.     Defendant Julius Bakari failed to disclose material financial information that he established the unauthorized third bank account by diverting Plaintiff's Lifeline Massachusetts revenue and profits to that account.

100.    Defendants Julius Bakari and Eugenie Bakari failed to disclose material financial information that they had diverted Plaintiff's Lifeline Massachusetts revenue and profits to purchase an unauthorized personal vehicle being driven and used in DC and not in Massachusetts where the Lifeline Massachusetts business was located.

101.    Defendants Julius Bakari, Eugenie Bakari, and Poufong failed to disclose material financial information that they had used Plaintiff's DC incorporation and its funds to establish fraudulent, affiliate foreign entities in Georgia and Pennsylvania.

102.    Defendants Julius Bakari, Eugenie Bakari, and Poufong concealed material financial information about Plaintiff's Lifeline Massachusetts operations and the fraudulent, affiliate foreign entities in Georgia and Pennsylvania, which they had a duty to disclose.

103.    As a result of these concealments, Plaintiff has suffered damages, including but not limited to, loss of revenue, profits, future earnings, and opportunity.

104.    Defendants acted with actual malice and intent to defraud Plaintiff by concealing Plaintiff's Lifeline Massachusetts profitability, the unauthorized third bank account, the diversion of Plaintiff's Lifeline Massachusetts' revenue and profits to open the unauthorized third account and purchase a personal vehicle for Defendants Julius Bakari and Eugenie Bakari, and the use of Plaintiff's DC incorporation and its funds to establish

fraudulent, affiliate foreign entities in Georgia and Pennsylvania absent Plaintiff's knowledge and consent.

WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia; the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into an unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss; a tarnished reputation; grave risk to its financial and operational stability; and threat of insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its favor and against Defendants, jointly and severally, in an amount greater than $2,000,000.00 or an amount to be determined at trial, with interests and costs, attorney's fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT FOUR – CONVERSION

### (Defendant Julius Bakari, Defendant Eugenie Bakari, Defendant Lifeline Home Health, Inc. , Defendant Lifeline Home Health, Defendant Poufong, Defendant Fobuzie, Defendant Tamukong, and Defendant Nibuh)

105. Plaintiff incorporates herein by reference paragraphs 1 through 104 above.

106. Defendant Julius Bakari fraudulently misrepresented to Bank of America that he was authorized to establish a bank account for Plaintiff's Lifeline Massachusetts operations as sole signatory and that Mrs. Makinde allegedly stole $16,000.00 from the bank.

107. Bank of America relied on Defendant Julius Bakari's misrepresentation to Plaintiff's detriment.

108.    Defendant Julius Bakari took Plaintiff's Lifeline Massachusetts revenue and profits placed it in an unauthorized third account thus willfully exercising unlawful possession of it and depriving Plaintiff of its rightful use.

109.    Defendants Julius Bakari and Eugenie Bakari have used Plaintiff's Lifeline Massachusetts revenue and profits to finance the purchase of a personal vehicle without Plaintiff's knowledge and consent.

110.    Defendants Julius Bakari, Eugenie Bakari, and Poufong used Plaintiff's Lifeline Massachusetts revenue and profits to establish fraudulent affiliate businesses, Defendants Lifeline Home Health, Inc. and Lifeline Home Health.

111.    Any and all funds Defendants, jointly and severally, diverted and/or used absent Plaintiff's knowledge and consent to create fraudulent affiliate businesses in Georgia and Pennsylvania, change of the name of the Lifeline Massachusetts business and its officers with a submission of a fraudulent Certificate of Amendment from DCRA, establish the unauthorized third account, and personally benefiting from their actions resulted in Defendants' conversion of Plaintiff's property.

112.    Defendants Lifeline Home Health, Inc., Lifeline Home Health, Fobuzie, Tamukong, and Nibuh all were participants and benefactors from Defendants Julius Bakari, Eugenie Bakari, and Poufong's actions that excluded Plaintiff's rights to the funds and business opportunities, thus contributing to the conversion of Plaintiff's property.

113.    As a result of this conversion, Plaintiff has suffered damages, including but not limited to, loss of revenue, profits, future earnings, and business opportunities.

    WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown

18

amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia; the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss; a tarnished reputation; grave risk to its financial and operational stability; and threat of insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its favor and against Defendants, jointly and severally, in an amount greater than $2,000,000.00 or an amount to be determined at trial, with interests and costs, attorney's fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT FIVE – UNJUST ENRICHMENT

## (Defendant Julius Bakari, Defendant Eugenie Bakari, Defendant Lifeline Home Health, Inc., Defendant Lifeline Home Health, Defendant Poufong, Defendant Fobuzie, Defendant Tamukong, and Defendant Nibuh)

114.    Plaintiff incorporates herein by reference paragraphs 1 through 113 above.

115.    Pursuant to the partnership agreement, Plaintiff relied to its detriment on Defendant Julius Bakari, in his capacity as an officer, to serve Plaintiff and its shareholders in a lawful, ethical, and transparent manner in every aspect of his duties.

116.    Pursuant to Plaintiff hiring Defendant Poufong as Director of Lifeline Massachusetts to perform the daily activities of the business, Plaintiff relied to its detriment on Defendant Poufong, in his capacity as an officer, to serve Plaintiff and its shareholders in a lawful, ethical, and transparent manner in every aspect of his duties.

117. Defendants Julius Bakari and Poufong had an appreciation and knowledge of the benefit conferred upon them as Plaintiff's Lifeline Massachusetts' officers with limited authority to manage select affairs on Plaintiff's behalf.

118. Defendants Julius Bakari, Eugenie Bakari, and Poufong abused this benefit and exceeded their scope of authority by misappropriating and converting Plaintiff's Lifeline Massachusetts' revenue and profits, directing funds to an unauthorized bank account, and purchasing a vehicle with Plaintiff's funds for personal use, thus deriving profits to enrich themselves at Plaintiff's detriment.

119. Defendants Lifeline Home Health, Inc., Lifeline Home Health, Fobuzie, Tamukong, and Nibuh have all profited and flourished, as fraudulent businesses and officers of these fraudulent businesses, through Defendants' Julius Bakari, Eugenie Bakari, and Poufong actions at Plaintiff's detriment.

WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia; the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss; a tarnished reputation; grave risk to its financial and operational stability; and threat of insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its favor and against Defendants, jointly and severally, in an amount greater than

$2,000,000.00 or an amount to be determined at trial, with interests and costs, attorney's

fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT SIX – GROSS NEGLIGENCE
### (Defendant Julius Bakari, Defendant Eugenie Bakari, and Defendant Poufong)

120.    Plaintiff incorporates herein by reference paragraphs 1 through 119 above.

121.    Defendants Julius Bakari, Eugenie Bakari, and Poufong, jointly and separately,

owed a duty of care to Plaintiff in the conduct of the partnership agreement and being

officers of the Lifeline Massachusetts business, by refraining from engaging in grossly

negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

122.    Defendants Julius Bakari, Eugenie Bakari, and Poufong, jointly and separately,

breached their duty of care when they intentionally conspired to divert funds generated

from the lawful operations of Lifeline Massachusetts to: establish fraudulent foreign entities

of Plaintiff's company in Georgia and Pennsylvania; allow Defendant Julius Bakari to open an

unauthorized third bank account in Massachusetts to which he is sole signatory; and permit

the purchase of a personal vehicle for Defendants Julius Bakari and Eugenie Bakari without

Plaintiff's knowledge or consent.

123.    Defendants Julius Bakari, Eugenie Bakari, and Poufong, jointly and separately,

breached their duty of care when, with intent and knowledge, they conspired to allow

Defendant Julius Bakari to unlawfully change Plaintiff's Lifeline Massachusetts name in the

state of Massachusetts absent notification to the board of directors and shareholders.

124.    As a result of Defendants Julius Bakari, Eugenie Bakari, and Poufong's joint and

separate breach of their duty of care to Plaintiff, it is the proximate and intervening cause of

damages suffered by Plaintiff, including but not limited to, loss of revenue and profits,

investment, business opportunities, future earnings, and the grave risk posed to its solvency, reputation, existence, and the public welfare.

125.    Defendants Julius Bakari, Eugenie Bakari, and Poufong were grossly negligent and acted with actual malice and intent in breaching their duty of care owed to Plaintiff.

WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia; the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss; a tarnished reputation; grave risk to its financial and operational stability; and threat of insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its favor and against Defendants, jointly and severally, in an amount greater than $2,000,000.00 or an amount to be determined at trial, and $5,000,000.00 in punitive damages, both with interest and costs, attorney's fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT SEVEN – BREACH OF FIDUCIARY DUTIES
**(Defendant Julius Bakari, Defendant Eugenie Bakari, and Defendant Poufong)**

126.    Plaintiff incorporates herein by reference paragraphs 1 through 125 above.

127.    As Plaintiff's Lifeline Massachusetts officers, Defendants Julius Bakari, Eugenie Bakari, and Poufong owe a fiduciary duty to Plaintiff, its officers, directors, and shareholders. Defendant Eugenie Bakari owed a fiduciary duty to Plaintiff since she was

aware of the partnership agreement between Defendant Julius Bakari, her husband, and Mrs. Makinde, and became an officer of Lifeline Massachusetts fraudulently replacing Mrs. Makinde.

128.    Defendants Julius Bakari, Eugenie Bakari, and Poufong have been dishonest in their dealings with Plaintiff and Mrs. Makinde, thus breaching their duty of disclosure.

129.    Defendants Julius Bakari and Eugenie Bakari have been reckless in their performance of their duties as officers, thus breaching the duties of care, good faith and fair dealing.

130.    Defendants Julius Bakari, Eugenie Bakari, and Poufong have put their personal interests above Plaintiff's, thus breaching the duty of loyalty.

131.    Defendant Julius Bakari, as partner regarding Lifeline Massachusetts, has acted beyond the scope of his delegated authority, thus breaching the duty of obedience.

132.    Defendants Julius Bakari, Eugenie Bakari, and Poufong are acting solely in their own interests and for their own personal gain with blatant and reckless disregard for Plaintiff's financial health and stability.

133.    As a result of Defendants Julius Bakari, Eugenie Bakari, and Poufong's joint and separate breach of their fiduciary duties to Plaintiff, it is the proximate and intervening cause of damages suffered by Plaintiff, including but not limited to, loss of revenue and profits, investment, opportunity, future earnings, and the grave risk posed to its solvency, reputation, existence, and the public welfare.

WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and

Georgia, the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss; a tarnished reputation; grave risk to its financial and operational stability; and threat of insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its favor and against Defendants, jointly and severally, in an amount greater than $2,000,000.00 or an amount to be determined at trial, with interest and costs, attorney's fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT EIGHT – CIVIL CONSPIRACY
## (Defendant Julius Bakari, Defendant Eugenie Bakari, Defendant Poufong, Defendant Fobuzie, Defendant Tamukong, and Defendant Nibuh)

134.    Plaintiff incorporates herein by reference paragraphs 1 through 133 above.

135.    Defendant Julius Bakari, without Plaintiff's consent or approval, on or about August 16, 2013, filed a Certificate of Authority with the Commonwealth of Pennsylvania to establish the fraudulent foreign entity, Defendant Lifeline Home Health, and divert and deprive Plaintiff of its revenue and profits. Defendants Eugenie Bakari and Poufong, officers of Lifeline Massachusetts that was fraudulently changed to Lifeline Home Health, Inc. and back to Lifeline, Inc. and registered as a foreign entity in the Commonwealth of Pennsylvania, conspired along with Defendant Julius Bakari to establish the fraudulent Lifeline Home Health and divert and deprive Plaintiff of its revenue and profits.

136.    Defendant Julius Bakari, without Plaintiff's consent or approval, on or about October 10, 2012, filed a Certificate of Authority for Foreign Corporation with the State of

Georgia to establish the fraudulent foreign entity, Defendant Lifeline Home Health, Inc., and divert and deprive Plaintiff of its revenue and profits. Defendants Eugenie Bakari and Poufong, officers of Lifeline Massachusetts that was fraudulently changed to Lifeline Home Health, Inc. and back to Lifeline, Inc. and registered as a foreign entity in the State of Georgia, conspired along with Defendant Julius Bakari to establish the fraudulent Lifeline Home Health, Inc. and divert and deprive Plaintiff of its revenue and profits.

137.    Based upon information, Plaintiff's Lifeline Massachusetts revenue and profits were diverted to open and operate fraudulent, affiliate businesses in Georgia and Pennsylvania, and to open an unauthorized third Lifeline Massachusetts bank account.

138.    As a result of Defendants' conspiracy, jointly and severally, to operate fraudulent, affiliate businesses and divert revenue and profits due to Plaintiff to operate the fraudulent, affiliate businesses and allow Defendant Julius Bakari to open an unauthorized third Lifeline Massachusetts bank account, Plaintiff has suffered severe economic injury, including lost revenue and profits and other compensatory damages totaling more than $2,000,000.00 or an amount to be determined at trial.

WHEREFORE, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to: financial losses that include the to-date unknown amount of revenue generated by the fraudulent affiliate businesses in Pennsylvania and Georgia; the diversion of funds from the Lifeline Massachusetts expense and payroll accounts into the unauthorized third bank account to which Defendant Julius Bakari is the sole signatory; the $48,000.00 purchase of a personal vehicle; the $16,000.00 conversion Defendant Julius Bakari perpetrated upon Bank of America; loss of profits; opportunity loss; a tarnished reputation; grave risk to its financial and operational stability; and threat of

insolvency, Plaintiff respectfully requests that compensatory judgment be entered in its favor and against Defendants, jointly and severally, in an amount greater than $2,000,000.00 or an amount to be determined at trial, with interests and costs, attorney's fees, and for such other and further relief as this Court deems appropriate and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

A.     A Temporary Restraining Order and Preliminary Injunction enjoining Defendants, their agents, officers, and employees, all persons and entities in active concert or participation with them, from: (1) acting in any capacity for and on behalf of Plaintiff; (2) establishing any further foreign or domestic entities in the name of Lifeline, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, and any and all other variations of Plaintiff's name; (3) establishing any further foreign or domestic entities in the name of Lifeline, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, and any and all other variations of Plaintiff's name by using the corporation status of the lawful entities incorporated in Washington, DC; (4) accessing any and all bank accounts established in the names of and cease using any and all funds generated from the businesses of Lifeline, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, and any and all variations of Plaintiff's name in Washington, DC, Massachusetts, Georgia, Pennsylvania, and in any other jurisdiction in the United States or abroad for personal and company use; (5) alienating, withdrawing, transferring, removing, dissipating, or disposing of any property obtained as a result of

the Defendants' violations without prior approval of the Court; (6) preserving all business, financial, accounting, and other records concerning the operations of Lifeline, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, Inc., Lifeline, Inc. d/b/a Lifeline Home Health, and any all other variations of Plaintiff's name;  and (7) engaging in any and all future fraudulent conduct concerning Lifeline, Inc. and any and all other variations of Plaintiff's name;

B.   Compensatory damages in an amount greater than $2,000,000.00 or an amount to be determined at trial; punitive damages in the amount of $5,000,000.00 or an amount to be determined at trial; compensatory and punitive damages with interest and costs; and attorney's fees;

C.   Awarding Plaintiff its costs and disbursements, including reasonable attorney's fees; and

D.   Such further relief as the Court deems appropriate and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

Michelle Bell, Esq.
Bar No. 1004694
MC Bell Law Firm, PLLC
1776 I Street, NW, Suite 900
Washington, DC 20006
(202) 756-4856 office
(877) 256-6998 fax
Dated: October 31, 2014                    mbell@mcblawpllc.com